# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3086

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| James Evon Thompson, Sr., | * | [UNPUBLISHED] |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 14, 2012
Filed: May 17, 2012

_____

Before LOKEN, BYE, and MELLOY, Circuit Judges.

_____

PER CURIAM.

James Evon Thompson, Sr., began a one-year term of supervised release in April 2011. In early July, the government filed a verified petition to revoke, alleging that Thompson violated conditions of supervised release by failing to pay a special penalty assessment; failing to report for scheduled drug tests and mental health counseling; committing other crimes, evidenced by his arrests in Idabel, Oklahoma and Dallas County, Texas in June 2011; failing to notify supervising Probation Officer Brent Young of a change in residence or employment; and leaving the Western District of Arkansas without permission.

At the start of the revocation hearing, Thompson objected that he did report he would be working in Idabel, Oklahoma. He admitted the other alleged violations. The district court[1] heard testimony by Probation Officer Selena Earsa, who recounted telephone conversations with Officer Young concerning Thompson's alleged violations, and by Thompson. The court found: "the government has established by a preponderance of the evidence that he was in violation of the conditions of his release by failing to follow through with Mr. Young concerning the employment in Idabel" and by committing the other Grade C violations. The court revoked supervised release and sentenced Thompson to eight months in prison and four months of additional supervised release in a residential re-entry facility where he "shall participate" in substance abuse treatment and mental health counseling. Thompson appeals, arguing only that the court clearly erred in finding that he violated supervised release by failing "to properly notify his probation officer of his work and attendant travel plans." Concluding there was no clear error, we affirm. See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (standard of review).

Except for failing to pay a special assessment, the violations arose out of Thompson's travels in June 2011. The dispute concerns his contacts with Probation Officer Young, a dispute clouded by the government presenting its version through hearsay testimony by Officer Earsa, whose telephone talks with Officer Young had not discussed this issue in any detail. The district judge credited much of Thompson's testimony, ignored conflicting testimony by Officer Earsa,[2] and relied

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

[2]Thus, the district court avoided an issue not raised by Thompson at the hearing -- whether Earsa's hearsay testimony was admissible because it was "sufficiently reliable and the government ha[d] a reasonably satisfactory explanation for not producing" Officer Young. United States v. Martin, 371 F.3d 446, 448 (8th Cir.) (quotation omitted), cert. denied, 543 U.S. 1004 (2004). Thompson argues on appeal that Earsa's hearsay did not meet this standard. We need not take up that issue.

on facts that were undisputed or admitted by Thompson and inferences drawn from those facts.

Thompson testified that on June 7 he was offered work on a night shift shutting down a paper mill in Idabel, Oklahoma, ninety miles from Texarkana. The job would start that evening and might last three to five days. Thompson immediately called Officer Young. "I told him . . . if I could come back in the mornings . . . I would; but if I didn't, I would call him." Young approved the work trip but said he was too busy to process the normal out-of-district travel permit. According to Thompson, Young said, "Just get back with me when you finish the job."

It is undisputed that Thompson drove to Idabel in his father's car on June 7 and stayed there until the night of June 11, despite working only two days at the mill. Early on the morning of June 12, he was arrested in Idabel for public intoxication. He was released on June 13, the same day his father reported to Officer Young that Thompson had stolen the car by keeping it overnight without his father's permission. Thompson released the car to his father in Idabel later that day. After completing a period of probation in Idabel on June 19, Thompson traveled to Dallas by train, where he was arrested on June 23 on outstanding Dallas County warrants. Thompson made *no* contact with the Western District of Arkansas probation office from June 7 until the petition to revoke was filed on July 5. Between June 8 and June 27, he failed to report for four scheduled drug tests and one mental health counseling session.

On appeal, Thompson argues that the district court's finding of a violation for "not following through with supervision" was clearly erroneous because "it was not shown that he was in Oklahoma without permission." But that misconstrues the court's decision. The court expressly found, based on Thompson's testimony, "that Mr. Thompson informed Mr. Young that he would be traveling to Idabel." The finding of a violation was based on Thompson's failure to report *for nearly a month* that he had stayed in Oklahoma and then traveled to Texas, despite admitting that he

-3-

told Officer Young on June 7 he would call if he stayed in Oklahoma even one night. On these undisputed facts, the finding Thompson was guilty of "not following through with supervision" was well supported, not clearly erroneous.

Thompson's unreported, month-long frolic in two other States, combined with his other admitted supervised release violations, extensive criminal history, and need for substance abuse treatment and mental health counseling, establish that the district court's revocation sentence was not an abuse of its substantial discretion. Accordingly, the court's Order dated September 20, 2011 must be affirmed.

_____